**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EDWARD KOHLER, | Civil Action No.: 14-3200 (JLL) |
| Plaintiff, | **OPINION** |
| v. | |
| TE WIRE & CABLE LLC., | |
| Defendant. | |

**LINARES**, District Judge.

This matter comes before the Court by way of cross motions for summary judgment filed by Plaintiff Edward Kohler and Defendant TE Wire & Cable, LLC. (ECF Nos. 24, 26). Plaintiff filed the instant lawsuit in Essex County Superior Court on March 4, 2014, alleging age and disability discrimination under the New Jersey Law against Discrimination ("NJ LAD") and also alleging violations of the Family Medical Leave Act ("FMLA") against his former employer, TE Wire & Cable ("TE Wire"). (ECF No. 1-1 Complaint, "Compl." at 5-12). Defendant removed the action to this Court on the grounds of federal question jurisdiction on May 19, 2015. (ECF No. 1).

Currently pending before the Court are Plaintiff's motion for partial summary judgment as to the issue of Defendant's liability for interference with Plaintiff's FMLA rights and liquidated damages thereunder (ECF No. 24-4, "Pl.'s Mov. Br.") as well as Defendant's motion for summary judgment as to all counts of the Complaint (ECF No. 26, "Def.'s Mov. Br."). Both parties have filed briefs in opposition to one another's motions (ECF No. 28-3, "Pl.'s Opp. Br."; ECF No. 31, "Def.'s Opp. Br.") as well as replies to same (ECF No. 29-3, "Pl.'s Reply Br."; ECF No. 34,

1

"Def.'s Reply Br."). The Court held oral argument on these motions on January 19, 2016. (ECF No. 43). For the reasons stated herein, the Court denies Plaintiff's motion for partial summary judgment and grants in part and denies in part Defendant's motion for summary judgment.

## I.   BACKGROUND

Plaintiff Edward Kohler is a 62[1] year-old man who was employed by Defendant TE Wire & Cable, LLC (the "Company" or "TE Wire") and its predecessor company since 1976. (Compl. ¶¶ 3-4; ECF No. 40-4, SOF ¶ 1)[2]. Defendant TE Wire is a manufacturer and supplier of wire and cable products. During the relevant time period in dispute, Plaintiff held the position of full-time Quality Control Manager at TE Wire. (Id. ¶ 5).

In January of 2013, 37 year-old[3] Patrick Scott ("Scott") was hired as General Manager of TE Wire. (ECF No. 40-6, "2d SOF" ¶¶ 13-14).[4] Scott was elevated to the position of President about six months after he started with the Company. (Id. ¶ 15). On April 8, 2013, 35 year-old[5] Magda Clavijo ("Clavijo") began her employment with TE Wire as Engineering Manager, a position that carried with it supervision of quality control personnel. (Id. ¶ 16). Specifically, Clavijo became Plaintiff's supervisor. (Id. ¶ 36).

On or about April 28, 2013, while still employed by TE Wire, Plaintiff was in a car accident. (SOF ¶ 4). The following morning, after waking with chest pains, Plaintiff was hospitalized. (Id.

---

[1] Plaintiff was 57 at the time of termination (Compl. ¶ 15) and 59 at the time he filed the instant action (ECF No. 40-6, Defendant's Local Rule 56.1(a) Response to Plaintiff's Statement of Material Facts in Dispute, "SOF" ¶ 3). Today, Plaintiff would be around 62 years old.

[2] Document number 40-4 is Defendant's Local Civil Rule 56.1(a) Responsive Statement of Material Facts filed in response to Plaintiff's Statement of Undisputed Material Facts (ECF No. 24-8). To the extent that Defendant admits to any Material Facts as stated by Plaintiff, the Court will cite only to "SOF" and the relevant paragraph number.

[3] Defendant admitted that as of November 19, 2015, Scott was 37. (2d SOF ¶ 14). It is unclear how old Scott was when he was hired, and it is unclear how old Scott is as of the date that this Opinion is written.

[4] Document number 40-6 is Defendant's Local Civil Rule 56.1(a) Responsive Statement of Material facts filed in opposition to Plaintiff's Statement of Disputed Material Facts.

[5] Defendant admitted that as of November 19, 2015, Clavijo was 35 years old. It is unclear how old Clavijo was when she was hired, and it is unclear how old Clavijo is as of the date that this Opinion is written. (Id. ¶ 17).

¶ 19). On April 30, 2013, Ms. Lynn Manley ("Manley"), the Company's Human Resource Manager, learned about Plaintiff's accident and hospital admission. (Id. ¶ 4). Plaintiff remained in the hospital from about April 29, 2013, through May 5, 2013. (Compl. ¶ 9). While at the hospital, Plaintiff was diagnosed with coronary artery disease, a condition which required stenting procedures. (SOF ¶ 5). On May 13, 2013, Plaintiff returned to work for the first time after the April 28th car accident. (Id. ¶ 6).

On May 20, 2013, Plaintiff, suffering from anxiety and neck pain, informed Manley that he was going to leave work to see his physician. (Id. ¶ 8). Plaintiff remained out of work for several weeks, during which time he was in communication with Manley regarding his condition. (Id. ¶ 9). On June 6, 2013, Manley signed a state disability form for Plaintiff indicating that Plaintiff was suffering from generalized anxiety disorder. Plaintiff's physician estimated that Plaintiff might be able to return to work on June 21, 2013. (Id. ¶¶ 9-11). On June 26, 2013, Plaintiff emailed Manley to inform her that he would need additional time off from work. (Id. ¶ 12). Specifically, Plaintiff submitted a Medical Certificate from Edward Klein, D.O., with an "estimated recovery" date of July 9, 2013. (Id. ¶ 12). On July 2, 2013, while Plaintiff was out on medical leave, Manley met with Plaintiff at a diner near his home and informed him that his employment had been terminated. (SOF ¶ 21).

The parties dispute the reasons why Plaintiff was terminated. TE Wire maintains that Plaintiff was terminated because his performance was severely deficient. (Def.'s Mov. Br. at 5-20). To support this position, Defendant chiefly relies upon a memorandum drafted by Clavijo, dated June 21, 2013 (the "Clavijo Memo") (ECF No. 36-15, "Clavijo Memo"). (2d SOF ¶ 22; Def.'s Mov. Br. at 5-6). In said memorandum, Clavijo "detail[s] her conclusions as to [P]laintiff's performance

3

deficiencies and recommend[s] that [P]laintiff be discharged." (SOF ¶ 22). The Clavijo Memo identified "five key deficiencies that in her view warranted termination." (Def.'s Mov. Br. at 6).

First, Clavijo explained that Plaintiff failed to timely perform a quality assurance survey that a customer requested, causing Defendant to lose that client as a future customer. (Def.'s Mov. Br. at 7; Clavijo Memo at 1). Second, Clavijo explains that Plaintiff failed to ensure that quality inspectors were performing necessary tests. (Def's Mov. Br. at 9-11; Clavijo Memo at 2). Specifically, Clavijo explained that after receiving a customer complaint informing Defendant of a product's failure to meet specifications, Clavijo "discovered that conductor resistance had not been tested since 2010," demonstrating "that [Plaintiff] instructed or let other people in the company instruct the inspectors to not test resistance on this product." (Clavijo Memo at 2; Def.'s Mov. Br. at 9-11). Third, Clavijo accuses Plaintiff of "neglecting his responsibilities to ensure that the quality of a particular TE Wire product satisfied the customer's requirements with respect to color transfer." (Def.'s Mov. Br. at 12; Clavijo Memo at 4). According to Defendant, Plaintiff's "failure to reject wire for color transfer was . . . absolutely unacceptable and put the company in a terrible position." (Def.'s Mov. Br. at 13) (quotations omitted).

Additionally, the Clavijo Memo explains Plaintiff's failure to run periodic quality control meetings. (Def.'s Mov. Br. at 13-14; Clavijo Memo at 2). Clavijo concluded that although it was Plaintiff's responsibility to run these meetings, Plaintiff left the meetings in the control of a processing engineer. (Def.'s Mov. Br. at 13; Clavijo Memo at 2). The Clavijo Memo states: "I asked [Plaintiff] several times to lead the quality clinics but he always found an excuse to not lead the meetings. Due to his reluctance for two months to chair the meetings I had to take on that responsibility." (Clavijo Memo at 2). Finally, Defendant alleges that "Clavijo's investigation and Scott's review of [P]laintiff's past work led them both to conclude that [P]laintiff was unable to

4

adequately and timely perform one of the core functions of the QA Manager position—completing CARs [Corrective Action Requests] and RMAs [Return Material Authorizations]." (Def.'s Mov. Br. at 14).

Defendant states that "[u]pon reviewing Clavijo's memorandum, and in light of his own belief that [P]laintiff was not performing at an acceptable level, Scott, [the Company's] President, made the 'final decision' to accept Clavijo's recommendation and terminate [P]laintiff's employment." (2d SOF ¶ 22).

As discussed in more detail, below, Plaintiff alleges that the allegations in the Clavijo Memo are merely a pretext for the Company's unlawful discrimination against him. Indeed, Plaintiff alleges that TE Wire fired him on account of his age and disability in violation of the New Jersey Law Against Discrimination ("NJ LAD"). (Compl. ¶¶ 14-23). Plaintiff also alleges that Defendant violated the FMLA in two ways: (1) by interfering with Plaintiff's right to 12 weeks of medical leave under the Act when it terminated him prior to the exhaustion of those 12 weeks ("interference claim"), and (2) by retaliating against Plaintiff for his attempt to exercise his rights under the Act by not reinstating him ("retaliation claim").

Plaintiff has filed a motion for partial summary judgment regarding his FMLA interference claim. Plaintiff is also seeking summary judgment with regards to the issue of liquidated damages under the FMLA. Defendant seeks summary judgement as to each of Plaintiff's claims. Both motions are fully briefed, and are currently pending before the Court.

## II.    LEGAL STANDARD

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 256 (1986).  "[T]he moving party must show that the non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof at trial." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The Court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the opposing party." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).  Moreover, "[i]n determining the appropriateness of summary judgment, the court should not consider the record solely in piecemeal fashion, giving credence to innocent explanations for individual strands of evidence, for a jury . . . would be entitled to view the evidence as a whole." *Abramson v. William Patterson College of New Jersey*, 260 F.3d 265, 285 (3d Cir. 2001) (quoting entirely *Howley v. Town of Stratford*, 217 F.3d 141, 151 (2d Cir. 2000)).  If a reasonable juror could return a verdict for the non-moving party regarding material disputed factual issues, summary judgment is not appropriate.  *See Anderson*, 477 U.S. at 242-43, 249 ("At the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

## III.    Counts I & II (NJ LAD)

Defendant has moved for summary judgment on Plaintiff's claims for employment discrimination under the NJ LAD.  (Def.'s Mov. Br. at 22-34).

The starting point for an action brought pursuant to the NJ LAD is the framework outlined by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).  *See Monaco v. American General Assur. Co.*, 359 F.3d 296, 300 (3d Cir. 2004) ("The Supreme Court of New Jersey has explained the three-step burden shifting analysis 'as a starting point' for analysis of claims under the NJLAD.") (citing *Bergen Commercial Bank v. Sisler*, 157 N.J. 188, 210, 723

6

(N.J.1999)). The three-step *McDonnell Douglas* analysis proceeds as follows. First, a plaintiff must establish a *prima facie* case of discrimination. *Monaco*, 359 F.3d at 300. To establish a *prima facie* case of discriminatory discharge under the NJ LAD, a plaintiff must demonstrate: (1) that he is a member of a protected class; (2) that he was otherwise qualified and performing the essential functions of the job; (3) that he was terminated; and (4) that the employer thereafter sought similarly qualified individuals for the job who were not members of his protected class. *See Victor v. State*, 203 N.J. 383, 408-09 (2010).

Assuming a plaintiff meets the *prima facie* case, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the adverse employment action. *Monaco*, 359 F.3d 300. Finally, if the defendant meets its burden, the plaintiff must then "discredit the defendant's proffered reason for its action or adduce evidence that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Id.*

### A. Plaintiff's *Prima facie* Case of Age and Disability Discrimination

The parties dispute whether Plaintiff has proffered sufficient evidence from which a reasonable jury could determine that Plaintiff has presented a *prima facie* case of age and disability discrimination under the NJ LAD. Defendant contends that Plaintiff cannot make a *prima facie* showing of age or disability discrimination under the NJ LAD because he cannot satisfy the second or fourth prongs of the *prima facie* case—namely, that he was performing the essential elements of the job and that he was replaced by an individual not within the protected class. (Def.'s Mov. Br. at 23-24).

Plaintiff, for his part, argues that he easily satisfies the *prima facie* case of discrimination. (Pl.'s Opp. Br. at 6). To demonstrate that he been performing the job's essential elements, Plaintiff notes that his performance evaluations reveal a history of strong performance at the Company. (Id.

at 6). Plaintiff also notes that "the largest raise of his career came mere months before he became the alleged disastrous employee [Defendant] now describes" (Pl.'s Opp. Br. at 6) and cites to deposition testimony of Ms. Manley who agreed with Plaintiff's counsel that the raise was discretionary and that if the employee was not doing his job, the Company could have denied the raise. (Id.; Noble Aff., Exh. E., Manley Dep. 63:16-64:7). Additionally, Plaintiff has cited to deposition testimony that appears to contradict some of the accusations in the Clavijo Memo. (Pl.'s Opp. Br. at 16-23).

With regards to the fourth element of the *prima facie* case of discrimination, Plaintiff contends that although the Company did not hire a younger or non-disabled person to replace him, he can nevertheless meet the fourth prong of the *prima facie* case where his job duties were reallocated to younger and non-disabled employees. (Id. at 10). Specifically, Plaintiff notes that his job responsibilities were taken over by Clavijo, who was 35 years old at the time (Pl'.s Opp. Br. at 9; Noble. Aff., Exh. L, Clavijo Dep. 199:23-201:2) and by Raysa Acosta, who was 25 years old at the time (Id., Exh. LL, Acosta Dep. 35:6-43:23).

The Court finds that Plaintiff has offered sufficient evidence to show that he can meet a *prima facie* case under the NJ LAD. Based upon the evidence offered by Plaintiff and discussed above, a reasonable jury could believe that he was performing the essential functions of the job prior to his termination. Additionally, it is undisputed that Defendant redistributed Plaintiff's responsibilities to employees who were younger than Plaintiff and non-disabled—specifically, Magda Clavijo (35 years old in 2013) (Pl'.s Opp. Br. at 9; Noble. Aff., Exh. L, Clavijo Dep. 199:23-201:2) and Raysa Acosta (25 years old in 2013) (Id., Exh. LL, Acosta Dep. 35:6-43:23). The Court finds that this redistributing of job responsibilities to Clavijo and Acosta, who were significantly younger than Plaintiff and non-disabled, may satisfy the fourth prong of Plaintiff's

*prima facie* case.[6]  *See Geldreich v. American Cyanamid Co.*, 299 N.J. Super. 478, 489 (N.J. Super. Ct. App. Div. 1997) ("As to the fourth prong, plaintiff's evidence, if believed, was sufficient to show that his job functions survived; and that a younger employee, aged forty four, assumed supervision of clerical functions . . . ."); *see also Wright v. L-3 Communications Corp.*, 277 F. Supp. 2d 293, 301 (D.N.J. 2002) (noting that to meet the fourth element, "a plaintiff need not show that his job functions were reassigned to a single employee after the plaintiff's termination, but can demonstrate that multiple employees assumed responsibility for the same job functions that the plaintiff performed prior to termination.").

Thus, whether Plaintiff can prove the second element of his NJ LAD claims for age and disability discrimination is a question of disputed material fact that is to be left for a jury's determination.

## B. Defendant's Non-Discriminatory Reasons for Terminating Plaintiff

Defendant contends that it has offered significant evidence of a non-discriminatory motive for terminating Plaintiff—specifically, that he was a performing far below expectation. (Id. at 26-34).  The Court agrees that Defendant has offered evidence from which a jury could find that its decision to terminate Plaintiff was based on Plaintiff's poor job performance.  As discussed above,

---

[6] Defendant relies on *Venegas v. Cosmetics Essence, LLC*, No. L-4030-11, 2015 WL 588403, at *4 (N.J. App. Div. Feb. 13, 2015) for the proposition that Plaintiff cannot meet the fourth prong because he "has failed to adduce any evidence of discriminatory remarks or other indicia of discriminatory animus in support of either his age or disability-based LAD claim." (Def.'s Mov. Br. at 24).  In *Venegas*, the New Jersey Appellate Division explained that New Jersey courts have granted summary judgment on age discrimination claims under the NJ LAD based on a failure to meet the fourth element where a plaintiff was not replaced with a *significantly* younger employee. 2015 WL 588403, *3-5 ("Plaintiff's *prima facie* case founders on the fourth element because he is unable to establish, through defendant's retention of a significantly younger worker *or otherwise*, an inference of age discrimination.") (emphasis added).  Here, Defendant has not argued (nor can it) that Acosta and Manley are not sufficiently younger than Plaintiff.  Thus, Defendant's suggestion that Plaintiff needs to proffer additional evidence of discriminatory motive to satisfy the fourth prong in this case is inaccurate as a matter of law.  *See id.; see also Maxfield v. Sinclair Int'l.*, 766 F.2d 788, 792 (3d Cir.1985) *cert. denied sub nom*, 474 U.S. 1057 (1986) ("[T]he fourth element of the *McDonnell Douglas* test could be satisfied by proof of either replacement by someone outside the protected class *or* by someone younger *or* by other proof that the discharge was because of age.") (emphasis added).

the Clavijo Memo, which in large part is supported by deposition testimony and other documentary evidence, supports the Company's proffered non-discriminatory reasons for terminating Plaintiff.

### C. Plaintiff's Evidence of Pretext

A plaintiff seeking to avoid summary judgment at the pretext stage must offer sufficient evidence that would "allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons . . . was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Fuentes v. Perskie*, 32 F.3d 759, 764-765 (3d Cir. 1994). To that end, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, . . . and hence infer that the employer did not act for [the asserted] non-discriminatory reasons. *Id.* (quotations omitted); *see also Greenberg v. Camden Cnty. Vocational Tech. Schs.*, 310 N.J. Super. 189, 200 (N.J. Super. Ct. App. Div. 1998); *see also Venegas v. Cosmetic Essence, L.L.C.*, No. A-4634-13T1, 2015 WL 588403, at *5 (N.J. Super. Ct. App. Div. Feb. 13, 2015). A plaintiff seeking to defeat summary judgment at the pretext stage "cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer was wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765.

According to Defendant, Plaintiff has not provided any evidence that the justifications for his termination, as outlined in detail in the Clavijo Memo, can be said to be pretextual. (Def.'s Mov. Br. at 26-34). Defendant argues that "despite extensive discovery, [P]laintiff has failed to adduce any evidence of discriminatory remarks or other indicia of discriminatory animus in support of either his age or disability-based LAD claim." (Id. at 24). TE Wire directs the Court

10

to Plaintiff's deposition testimony, in which he failed to substantiate his belief that he was terminated because of his age and disability. (Id. 24-25). Indeed, Defendant contends that there exists "no evidence allowing for the inference that [Defendant] perceived [P]laintiff as too old, or too infirm by virtue of a real or perceived disability, to handle the responsibilities associated with his position" and that therefore his claims under the NJ LAD are appropriately dismissed at this stage. (Id. at 25).

Plaintiff, for his part, argues that the reasons for terminating Plaintiff, as stated in the Clavijo Memo, are merely a pretext for the Company's discriminatory motive. Generally, Plaintiff explains that "the timing and the purpose of the Clavijo Memo calls the entire memo into question." (Pl.'s Opp. Br. at 16). Specifically, Plaintiff offers the following evidence to support his pretext theory: (1) his history of prior positive performance reviews (Pl.'s Opp. Br. at 6; Manley Dep., 51:4-12; Noble. Aff., Exh. F); (2) his receipt of the largest bonus of his career shortly before his termination (Pl.'s Opp. Br. at 16; Noble Aff., Exh. H); (3) Manley's admission in a deposition that she directed Magda Clavijo to prepare the memorandum with the purpose of "mak[ing] sure that [Plaintiff] wasn't performing his job" (Pl.'s Opp. Br. at 7-8; Noble Aff., Exh. E. 96:15-18); (4) the authorship of the memorandum by an individual who had worked with Plaintiff for "a grand total of 10 working days prior to his accident" and for one additional week when Plaintiff was [periodically] back at work" prior to drafting same (Pl.'s Opp. Br. at 7). Plaintiff also notes that, unlike his younger and non-disabled counterparts, Plaintiff did not receive the benefit of a performance improvement plan ("PIP"). (Pl.'s Opp. Br. at 3, 28; Noble Aff., Exh. K).

In further support of his pretext argument, Plaintiff attacks the accuracy and reliability of the contents of the Clavijo Memo. (Pl.'s Opp. Br. at 12-23). For example, Plaintiff contradicts

the Clavijo Memo's allegations that Plaintiff directed quality technicians not to perform certain testing by citing to the deposition testimony of Hitesh Rana, one of Plaintiff's subordinates whom Manley testified was told by Plaintiff not to test a certain product for resistance, who denied being told not to performing testing. (Pl.'s Opp. Br. at 18; COF ¶¶ 73-80; Noble Aff., Exh. Y, Rana Dep. 32:1-3). As another example, in response to the Clavijo Memo's accusation that Plaintiff was responsible for allowing products to be accepted that had a color-transfer problem (Noble Aff., Exh. P at ¶ 6), Plaintiff cites to the deposition testimony of Patrick Arnone, the Vice President of Manufacturing who (unlike Clavijo, Scott and Manley) was employed by TE Wire during the time in question and who testified that the 2012 return was not Plaintiff's fault. (Pl.'s Opp. Br. at 19, COF ¶¶ 81-91; Noble. Aff., Exh. I, Arnone Dep. 65:14-66:1).

The Court, "viewing the evidence in the light most favorable to the plaintiff, as is required when a defendant moves for summary judgment, and viewing the record as a whole," finds that Plaintiff's evidence of pretext is sufficient to permit his NJ LAD claims to proceed to trial. *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 285 (3d Cir. 2001). Indeed, the Court finds that Plaintiff has offered sufficient evidence from which a reasonable jury could credit his argument that "[a] combination of becoming disabled and a youth movement instituted at [the Company] led to plaintiff's demise." (Pl.'s Opp. Br. at 6). Therefore, Defendant's motion for summary judgement as to Plaintiff's NJ LAD claims is denied.

## IV.    Count III (Interference and Retaliation under the FMLA)

The parties have cross-moved for summary judgment as to Plaintiff's claim of interference with his FMLA rights. The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period … [i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious

health condition." 29 U.S.C. § 2612(a)(1)(C). The FMLA also provides that "any eligible employee who takes leave under section 2612 of [the FMLA] ... shall be entitled, on return from such leave—(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a). Employers may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter [of the FMLA]." 29 U.S.C. § 2615(a).

Thus, under the FMLA, an employee may bring claims against an employer for the (1) interference with his right to twelve weeks of medical leave, and may also bring a separate claim for (2) retaliation premised upon the employer's failure to restore the employee to the position he held before taking medical leave/failure to reinstate.

"To prevail on an FMLA interference claim, the employee merely needs to show she was entitled to benefits under the FMLA and that she was denied them." *Thurston v. Cherry Hill Triplex,* Civ. No. 06–3862, 941 F. Supp. 2d 520, 526 (D.N.J. 2008) (citing *Parker v. Hahnemann Univ. Hosp.,* 234 F.Supp.2d 478, 485 (D.N.J. 2002)).

By contrast, to "'[t]o assert a retaliation claim, a plaintiff must demonstrate that: (1) he or she is protected under the FMLA, (2) he or she suffered an adverse employment action, and (3) the adverse action was causally related to the plaintiff's exercise of his or her FMLA rights.'" *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508 (3d Cir. 2009) (quoting district court below) (internal quotations omitted). The burden of articulating a legitimate, non-discriminatory rationale then shifts to the employer, after which the employee must meet his burden in demonstrating that the reasons for termination offered by the employer were merely a pretext for unlawful discrimination. *Bearley v. Friendly Ice Cream Corp.,* 322 F. Supp. 2d 563, 572–73 (M.D. Pa.2004).

### A. FMLA Interference Claims

#### i.   Plaintiff's Arguments

Plaintiff contends that TEWC interfered with his benefits because Plaintiff was terminated while on medical leave and before the twelve weeks of leave to which he was entitled had expired. (Pl's. Mov. Br. at 7).  Plaintiff argues that "the right to job-protected leave under 29 U.S.C. § 2612 [the interference provision] is unlimited," such that the Third Circuit applies a strict liability standard to interference claims.  (Pl's. Mov. Br. at 11-14).  Stated differently, according to plaintiff, any time an employee entitled to FMLA leave is terminated during the course of that leave and prior to the exhaustion of such leave, the employer will be liable notwithstanding any legitimate business reason for terminating the employee.   (Id.).   Accordingly, Plaintiff maintains that Defendant's argument that Plaintiff would have been terminated regardless of leave, which *is* a defense to Plaintiff's reinstatement claim, is of no avail here, therefore Plaintiff is entitled to summary judgment.

#### ii.    Defendant's Arguments

In response, Defendant argues that a strict liability standard is not applied in interference claims; rather, Defendant states that "[i]t is crystal clear from the controlling precedent that employees on FMLA leave are unquestionably subject to discharge—so long as the employee's leave status is not a factor in the termination decision."  (Def.'s Opp. Br. at 1).  Furthermore, Defendant contends that Plaintiff's claim for interference should be dismissed on summary judgment as duplicative of his claim for retaliation, and also because Plaintiff has failed to show that he was prejudiced by the alleged interference.  (Id. at 3, 15-16).

#### iii.    Analysis

##### a. Plaintiff's Motion for Summary Judgment as to his FMLA Interference Claim is Denied.

14

Having reviewed the cases offered by the parties and having considered the arguments offered by Counsel at the January 19, 2016 hearing, the Court declines to grant Plaintiff's request for summary judgment as to his interference claim. Specifically, the Court finds that Plaintiff's contention that his interference claim is subject to a strict liability standard goes against the weight of the case law.

In support of his position that interference claims are subject to a strict liability standard, Plaintiff relies upon a Northern District of Georgia decision from 1996 in which the district court, after a statutory analysis, determined that interference claims are subject to a strict liability standard. (Pl.'s Mov. Br. at 11, citing *Kaylor v. Fannin Reg'l Hosp. Inc.*, 946 F. Supp. 988, 999 (N.D. Ga. 1996)). Plaintiff states that the District of New Jersey has "adopted" the strict liability standard of *Kaylor*. (Pl.'s Mov. Br. at 11, citing *Viereck v. City of Gloucester City*, 961 F. Supp. 703, 708-09 (D.N.J. 1997) (Irenas, J.). However, the district court in *Viereck* did not adopt *Kaylor's* strict liability approach. Rather, that case stands for the unremarkable proposition that an employer unlawfully interferes with an employee's FMLA rights when he terminates the employee *for excessive absenteeism* during the time when the employee is on FMLA.[7]   More

---

[7] In *Viereck*, the plaintiff sought leave for a serious injury sustained on account of a car accident. *Id.* at 704-705. Plaintiff used her accumulated sick leave and vacation time during her recovery period. *Id.* at 705. Only after she had exhausted her accumulated sick leave and vacation time did Plaintiff learn about her 12 weeks of unpaid sick leave under the Act, and request FMLA leave. *Id.* Her employer granted Plaintiff's request for FMLA leave; however, the employer (the City of Gloucester) applied Plaintiff's 12-week leave retroactively, dating back to the first date of her absence. *Id.* When Plaintiff did not appear for wok, the City fired Plaintiff for excessive absenteeism. *Id.* Plaintiff then sued the City for interference with her FMLA rights. The issue in that case was whether the City properly applied Plaintiff's FMLA retroactively. Applying the promulgating regulations, Judge Irenas found that the City should have applied Plaintiff's FMLA leave prospectively, from the date that she requested FMLA leave, and therefore, the City wrongfully terminated her *during the time during which she was protected by leave under the act*. *Id.* at 708. Judge Irenas stated that: "Defendants' termination of plaintiff for excessive absenteeism during her FMLA leave violated the Act," and then cited to the Northern District of Georgia case (relied upon by Plaintiff, here) with a parenthetical noting that the Northern District of Georgia read § 2615(a)(1) as a strict-liability standard. *Id.* at 708. This Court does not construe Judge Irenas's singular citation to *Kaylor* as evidence of his Honor's intent to adopt the strict liability standard.

15

importantly, the Court is not aware of any recent case within this district or the Third Circuit in which a Court actually applied a strict liability standard to interference claims.[8]

Plaintiff also credits several cases within the Third Circuit for affirming the strict liability approach to interference claims. (Pl.'s Mov. Br. at 13-14). Specifically, Plaintiff relies upon the following language in support of the Third Circuit's "application" of a strict liability approach:

> Under th[e interference] theory, the employee need not show that he was treated differently than others. Further, the employer cannot justify its actions by establishing a legitimate business purpose for its decision. An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA.

*Callison v. City of Philadelphia*, 430 F.3d 117, 119-120; *see also Sommer v. The Vanguard Group*, 461 F.3d 397, 399 (quoting the above and adding that "[b]ecause the FMLA [interference claim] is not about discrimination, a *McDonnell-Douglas* burden shifting analysis is not required"); *see also Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014) (quoting *Sommer*, 461 F.3d at 399 and *Callison*, 430 F.3d at 119-120)). Despite the above language, in the overwhelming majority of cases cited by Plaintiff, the district courts and Third Circuit did not, in fact, apply a strict liability standard to interference claims; rather the courts found dismissal of same warranted where plaintiffs failed to state a *prima facie* case of interference.[9]

---

[8] In *Williams v. Shenango, Inc.*, a 1997 district court case out of the Western District of Pennsylvania, cited by Plaintiff, the Court adopted *Kaylor*'s strictly liability standard. 986 F. Supp. 309, 318. However, the Court finds this case to be stale in light of the binding precedent out of a number of Circuit Courts, discussed below.

[9] *See Johnson v. Cmty Coll. Of Allegheny Cnty.*, 566 F. Supp. 2d 405, 446-450 (W.D. Pa. 2008) (affirming the district court's grant of summary judgment in favor of employer where plaintiff failed to state a *prima facie* case of interference where she received more than the 12 weeks of leave to which the FMLA afforded her); *Sommer*, 461 F.3d at 406 (affirming the district court's grant of summary judgment in favor of employer on plaintiff's interference claim where the district court correctly held that the employer's house-based bonus program which prorated bonuses to account for hours not worked by employees who take FMLA leave did not amount to an interference of plaintiff's FMLA rights); *Ross*, 755 F. 3d at 192 (affirming district court's grant of summary judgment in favor of employer as to plaintiff's interference claim where plaintiff could not make a *prima facie* case of interference as he "received all of the benefits to which he was entitled by taking leave and being reinstated to the same position from which he left"); *Callison*, 430 F.3d at 119-121 (affirming grant of summary judgment on plaintiff's interference claim in favor of employer where the employer's sick leave policy at issue, which required an employee on any sick leave—including FMLA leave—to contact a hotline when leaving home during work hours did not amount to an interference of the

Moreover, a 2012 case out of the Third Circuit appears to directly challenge Plaintiff's position that the interference claims are subject to strict liability. *See Pellegrino v. Communications Workers of America*, 478 Fed App'x 742, 745-47, 2012 WL 1354482, *2-3 (3d Cir. Apr. 19, 2012) (unpublished). In *Pellegrino*, as in this case, the employer terminated the plaintiff while the plaintiff was out on FMLA sick leave. *Id.* Specifically, in *Pellegrino*, the employee terminated the employer for failure to comply with the Company's policy against traveling while on sick leave. *Id.* at 744. The Circuit stated that "every discharge of an employee while she is taking FMLA leave interferes with an employee's FMLA rights"; however, the Circuit stated that "because taking FMLA leave generally does not affect an employee's obligations under non-FMLA company policy," the termination was not an unlawful interference. *Id.* at 745.[10]

To the extent that there exists a tension within this Circuit as to whether an employer may lawfully interfere with an employees' right to FMLA leave, the Court notes that the Circuit courts that have squarely addressed this issue have expressly rejected a strict liability application of FMLA interference claims. *See, e.g., Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960-961 (10th Cir. 2002) ("[A]n employee may be dismissed, preventing her from exercising her statutory right to FMLA leave—but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave."); *Ballato v. Comcast Corp.*, 676 F.3d 768, 772 (8th Cir. 2012) ("[T]he FMLA does not impose strict liability on employers for interference claims. . . . If there exists a showing of interference, the burden shifts to the employer to prove there was

---

plaintiff's rights); *Geng v. PNC Financial Servs. Group, Inc.*, Civ. No. 13-4, 2014 WL 3778299, *14 (D.N.J. July 31, 2014) (Pisano, J) (granting summary judgment in employer's favor on plaintiff's FMLA intervention claim where "[p]laintiff's interference claim fails for the very basic reason that she was not denied any leave that she requested."); *Best v. Housing Authority*, 61 F. Supp. 3d 465, 476 (D.N.J. 2014) (granting summary judgment on plaintiff's interference claim in favor of employer where plaintiff could not show he was entitled to benefits under the FMLA).
[10] In support of its affirmance, the Circuit cited to case law out of the Eighth and Tenth Circuits that rejects a strict liability theory. *Id.* at 745 (citing *Bacon v. Hennepin County Med. Ctr.*, 550 F.3d 711, 715 (8th Cir. 2008) and *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1008-09 (10th Cir. 2011)).

a reason unrelated to the employee's exercise of FMLA rights for terminating the employee."); *Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005) ("The FMLA simply does not force an employer to retain an employee on FMLA leave when the employer would not have retained the employee had the employee not been on FMLA leave. This conclusion is supported by the FMLA's plain language and structure, the Department of Labor's implementing regulations, a persuasive Tenth Circuit decision, and uncluttered logic."); *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1006 (10th Cir. 2011) ("Section 2615(a)(1) is nevertheless not a strict liability statute, and an employer is not necessarily liable under the FMLA anytime it fires an employee who has requested or is on FMLA leave. Rather, because an employee who requests leave or is on leave has no greater rights than an employee who remains at work[,]. . . an employee may be dismissed, preventing her from exercising her statutory rights to FMLA leave . . . if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave."); (quotations omitted); *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507-08 (6th Cir. 2006) ("Both the statute and the DOL regulation likewise establish that interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct.").

Not only does the Court find the holding of the above-cited Circuit cases controlling on this issue, but the Court also finds the logic employed by the Sixth, Eighth, and Tenth Circuits to be sound. For example, in *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, the Tenth Circuit explained that "[i]f an employer interferes with the FMLA-created right to medical leave . . . following the leave, a deprivation of this right is a violation regardless of the employer' intent." *Smith*, 298 F.3d at 960. However, the Tenth Circuit recognized that "'an employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not

related to his or her FMLA request than he or she did before submitting the request.'" *Id.* (quoting *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998)). Stated differently, an employer may terminate an employee who is on FMLA leave so long as "the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Id.* at 961.

The Tenth Circuit's holding is consistent with the Department of Labor's regulations interpreting the FMLA. *See Throneberry*, 403 F.3d at 978 (citing 29 U.S.C. § 2654). Specifically, 29 C.F.R. § 825.216(a) provides that "[i]f an employee is laid off during the course of taking FMLA leave and employment is terminated, the employer's responsibility to continue FMLA leave, maintain group health plan benefits and restore the employee cease at the time the employee is laid off . . . ." *Id.* A holding that an employer who terminates an employee during FMLA leave is strictly liable for interference with the employee's FMLA rights is entirely at odds with the Secretary of Labor's promulgating regulation. See 29 U.S.C. § 2654.

Accordingly, the Court declines to apply a strict liability standard to Plaintiff's FMLA interference claim. The Court is not aware of any Third Circuit case in which the Circuit sanctioned such a standard, and binding case law from other Circuits expressly rejects this approach. Plaintiff's motion for summary judgment on his interference claim is therefore denied, as is his related request for liquidated damages.

b.   **The Court Declines to Dismiss Plaintiff's Interference Claim as Redundant of his FMLA Retaliation Claim**

Defendant contends that Plaintiff's claim for interference should be dismissed on summary judgment as duplicative of his claim for retaliation. (Def.'s Opp. Br. at 15-16). Plaintiff is correct that courts in this district have dismissed interference claims as redundant of claims for retaliation. However, in those cases, the interference claims were dismissed where the plaintiffs failed to allege that they were denied any FMLA entitlements. *See, e.g., Seeger v. Cincinnati Bell Telephone Co.*,

19

*LLC*, 681 F.3d 274, 283 (6th Cir. 2012) (dismissing plaintiff's interference claim as duplicative of the retaliation claim where plaintiff "received all of the FMLA leave to which he was entitled"); *Yamamoto v. Panasonic Corp. of N. Am.*, Civ. No. 12–2352 JLL, 2013 WL 3356214, at *11 (D.N.J. July 2, 2013) (Linares, J.) (dismissing the interference claim where "the premise of both [interference and retaliation] claims is that Defendant wrongfully terminated Plaintiff *when she returned from FMLA leave*.") (emphasis added); *Lovland v. Employers Mut. Cas. Co.*, 674 F.3d 806, 811 (8th Cir. 2012) (affirming the district court's dismissal of plaintiff's interference claim where plaintiff only asserted retaliation claims by alleging "discrimination that occurred after she took FMLA leave, not denial of, or interference with, her leave."); *Kumar v. Johnson & Johnson, Inc.*, Civ. No. 12-779, 2014 WL 5512549, *11 n.8 (Shipp, J.) (granting summary judgment in defendant's favor as to plaintiff's interference claim where her "only claim of 'interference' under the FMLA is the same as her claim for retaliation- 'not being returned to the same job with the same opportunities for advancement'").

Defendant chiefly relies upon *Lichtenstein v. University of Pittsburgh Medical Center*, 598 Fed. App'x. 109 (3d Cir. 2015) (unpublished). In *Lichtenstein*, the Third Circuit reiterated its earlier position that a plaintiff may not "have an automatic right to claim interference where . . . the claim is so clearly redundant to the retaliation claim." *Id.* at 113 (quoting *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500 (3d Cir. 2009)). The Court then found the plaintiff's interference claim was, "in form *and* substance . . . a claim for retaliation" where plaintiff has not claimed "that any benefits were actually withheld." *Id.*

The Court will not dismiss Plaintiff's interference claim as duplicative of his retaliation claim. Unlike the plaintiff in *Lichtenstein* who did not claim that any benefits were actually withheld, plaintiff here has alleged that the Company withheld his FMLA benefits by "terminating his

employment during his medical leave covered under the FMLA." (Compl. ¶ 28). Stated differently, Plaintiff claims that Defendant interfered with his FMLA rights by cutting short the 12 weeks of leave which he is believes he was afforded under the Act.

### c.   The Court Declines to Dismiss Plaintiff's Interference Claim Based on Defendant's Argument that Plaintiff cannot show Prejudice

In Defendant's opposition brief, the Company argues that Plaintiff's interference claim should be dismissed because "[a]n FMLA claim requires proof of prejudice, and plaintiff was not prejudiced." (Def.'s Opp. Br. at 3). Specifically, Defendant states that "Plaintiff does not claim to have been denied any FMLA benefits or discouraged from invoking his right to FMLA leave." (Id.).

As discussed above, a plaintiff seeking to establish an interference claim need only show he was denied benefits to which he was entitled under the FMLA. To be clear, a plaintiff does not generally need to show that he or she was prejudiced on account of the denial of FMLA benefits. Defendant's argument that Plaintiff must prove that he was prejudiced by the alleged interference appears to be based on TE Wire's understanding that Plaintiff's interference claim arises out of the fact that the Company failed "to provide formal notice of [Plaintiff's] FMLA rights and designate his leave as FMLA-protected." (Def.'s Opp. Br. at 4-6). Indeed, Defendant cites to several cases for the proposition that a plaintiff who was not informed of his FMLA rights must show that the lack of proper notice caused him injury. (Id.). However, Plaintiff's claims are not based upon the Company's failure to designate his medical leave as FMLA leave; rather, Plaintiff's interference claim is premised upon the Company terminating him prior to the expiration of the medical leave to which he was entitled. (See Compl. ¶ 28; Pl.'s Reply Br. at 2-6). Therefore, Plaintiff's interference claim does not require a showing that Plaintiff was somehow prejudiced by the denial of a full 12 weeks of protected leave.

21

## B. FMLA Retaliation Claim

Defendant has moved for summary judgment with regards to Plaintiff's claim for retaliation under the FMLA. (Def.'s Mov. Br. at 37-40). Defendant argues, as it does with regards to Plaintiff's claims under the NJ LAD, that Plaintiff cannot establish that the reasons given for Plaintiff's termination were a pretext for discrimination. (Id.).

"'To assert a retaliation claim, a plaintiff must demonstrate that: (1) he or she is protected under the FMLA, (2) he or she suffered an adverse employment action, and (3) the adverse action was causally related to the plaintiff's exercise of his or her FMLA rights.'" *Erdman*, 582 F.3d at 508 (quoting district court below) (internal quotations omitted). "Because FMLA retaliation claims require proof of the employer's retaliatory intent, courts have assessed these claims through the lens of employment discrimination law." *Lichtenstein.*, 691 F.3d at 302. Thus, the same *McDonnell Douglas* burden-shifting test that applies to Plaintiff's NJ LAD claims is applied to a claim for retaliation under the FMLA. *See id.*; *see also Budhun v. Reading Hospital & Medical Center*, 765 F.3d 245, 256 (3d Cir. 2014).

With regards to the *prima facie* case of retaliation, the parties only dispute whether Plaintiff has satisfied the final element—that is, whether he can demonstrate that his termination was "'causally related to [his] . . . exercise of . . . FMLA rights.'" *Erdman*, 582 F.3d at 508-09 (quoting district court below). "To demonstrate a *prima facie* case of causation, [a plaintiff] must point to evidence sufficient to create an inference that a causative link exists between [his] FMLA leave and [his] termination." *Lichtenstein*, 691 F.3d at 307.

Defendant maintains that Plaintiff has not satisfied the causation element where "Plaintiff concededly was granted back-to-back leaves of absence following his car accident, and admits that Manley and Clavijo were sensitive and accommodating throughout the ordeal, that Manley

encouraged him to apply for short term disability benefits and provided him with necessary paperwork, and that at no point did anyone suggest he hurry back to work." (Def.'s Mov. Br. at 39). The Company notes further that Plaintiff "testified that no one ever hinted that taking sick leave would have an adverse impact on his employment or criticized him for taking leave." (Id.).

Plaintiff contends that he can show causation where "Manley directly admitted that the fact that [Plaintiff] was on a medical leave allowed [D]efendant to find the alleged performance deficiencies justifying his termination" and where, at the time that she terminated him, Manley informed Plaintiff that "[s]ince [he had] been out, we found issues." (Pl.'s Opp. Br. at 36-37). Yet this argument misses the mark. The material inquiry with respect to an FMLA retaliation claim is not whether Plaintiff's medical leave was a proximate cause of plaintiff's termination; rather, the question is whether the employer retaliated or discriminated against the plaintiff for exercising his or her rights under the FMLA.

Plaintiff also argues that he can prove causation on account of the "unusually suggestive timing of [his] termination, which came during his undesignated medical leave." (Pl.'s Opp. Br. at 40). The Third Circuit has held that "[w]here the temporal proximity between the protected activity and the adverse action is 'unusually suggestive,' it is sufficient standing alone to create an inference of causality and defeat summary judgment." *LeBoon v. Lancaster Jewish Comm. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007); *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). The Court agrees with Plaintiff that a reasonable finder of fact may determine that Plaintiff's termination while on medical leave is "unusually suggestive" of retaliation. Therefore, the Court finds that Plaintiff has offered enough evidence to support his *prima facie* case of retaliation under the FMLA.

Of course, the Court's inquiry does not stop here. Having already found that the Company has offered a non-discriminatory rationale for its termination decision, the burden falls once again on Plaintiff to show that the Company's reasons are a pretext for discriminating against Plaintiff based upon the exercise of his FMLA rights. The Court finds that Plaintiff cannot meet this burden.

Aside from the temporal proximity between his leave and his termination, Plaintiff has not offered any other evidence that the reasons offered by the Company for terminating him were a mere pretext for discrimination based upon Plaintiff's taking of protected leave. In fact, the record tends to show that TE Wire was supportive and helpful regarding Plaintiff's need to take time off. Plaintiff testified that neither Manley nor Clavijo expressed any frustration over his need to take leave, that they never suggested that his job might be in jeopardy on account of his absences, that they were kind to him during this time and sensitive to his situation, and that neither suggested that he hurry back to work. (ECF No. 36, Affidavit of Lawrence Peikes, Esq., Exh. H., Kohler Dep. 209:17-24, 214:12-19, 217:22-218:12).

For these reasons, the Court will grant summary judgment in favor of Defendant with respect to Plaintiff's FMLA retaliation claim.

## V.    CONCLUSION

For the reasons stated herein, the Court denies Plaintiff's partial motion for summary judgement and grants in part and denies in part Defendant's motion for summary judgment. Specifically, the Court grant's Defendant's motion for summary judgment with respect to Plaintiff's claim of FMLA retaliation, and denies Defendant's motion for summary judgment with respect to Plaintiff's NJ LAD claims and FMLA interference claim. An appropriate Order accompanies this Opinion.

IT IS SO ORDERED.


DATED:     March ____8____, 2016


_____
JOSE L. LINARES
UNITED STATES DISTRICT JUDGE